# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

___

| | | |
|---|---|---|
| **UNITED STATES,** | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | Case No. 2:18-cr-20031-JTF |
| | ) | |
| **JOSE ANGEL SANCHEZ,** | ) | |
| | ) | |
|     Defendant. | ) | |

___

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS
___

Before the Court is Defendant Jose Angel Sanchez's Motion to Suppress that was filed on April 12, 2018. (ECF No. 19.) The United States responded on May 1, 2018 to which Defendant filed a reply on May 9, 2018. (ECF Nos. 25 & 28.) The motion was referred to the assigned Magistrate Judge who conducted a suppression hearing on June 4, 2018. (ECF Nos. 29 & 30.) On July 11, 2018, the Magistrate Judge issued a Report and Recommendation that Defendant's Motion to Suppress should be denied. (ECF No. 33.) On July 13, 2018, Defendant filed objections to which the Government filed a Response on July 25, 2018. (ECF Nos. 34 & 35.) After a *de novo* review, the Court finds that the Magistrate Judge's Report and Recommendation should be Adopted and Defendant's Motion to Suppress Denied.

## I.    FINDINGS OF FACT

The Magistrate Judge provided proposed findings of fact based on the exhibits and testimony of Agent Brent Hill as presented during the suppression hearing on June 4, 2018. (ECF No. 33, 1-5.) Agent Hill testified that on March 7, 2017 at 5:11 p.m., he was driving on Interstate 40 in Fayette County, Tennessee when he noticed that cars were traveling slower than

normal and appeared to be delayed by a blue Chevrolet Silverado pickup truck. Agent Hill noted that as he pulled into the lane behind the vehicle he could not read the entire Texas registration plate because a trailer ball hitch was covering the middle number on the tag. Hill moved into the left lane beside the truck to read the entire tag at which time he also observed the truck briefly veer across the line and then return into the right lane. Hill returned to the right lane where he followed the truck for a couple of miles. As the driver attempted to exit the highway, Hill signaled for the truck to pull over. Upon approaching the vehicle, Sanchez provided Agent Hill with a Texas identification card, instead of a driver's license. Sanchez also was unable to provide details concerning his trip to Nashville while the Agent observed that the truck appeared to have an improperly mounted spare tire, fresh dirt disturbances and fingerprints. While Hill was writing Sanchez a warning regarding the traffic violation, another agent arrived and proceeded to check the car with his narcotics detector canine for drugs. The dog traveled around the car twice, indicating a positive alert for drugs. The Court has reviewed the CDs, the investigative report and other exhibits admitted during the suppression hearing that comprised the events leading to the stop and search. (ECF No. 30.)

The Parties filed objections to the report and recommendation, none of which oppose any of the proposed findings of facts. (ECF No. 34.) As such, the Court adopts the Magistrate Judge's proposed findings of fact of this case. (ECF No. 55, 1–4.)

## II. LEGAL STANDARDS

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions.

28 U.S.C. § 636(b)(1)(A). Upon hearing a pending matter, "[T]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate's proposed findings and recommendation may file written objections to the report and recommendation. Fed. R. Civ. P. 72(b)(2).

The standard of review that is applied by the district court depends on the nature of the matter considered by the Magistrate Judge. Motions to suppress evidence are subject to *de novo* review. *See* 28 U.S.C. § 636 (b)(1)(A); *U.S. Fid. & Guarantee Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1088 (6th Cir. 1992). Upon review of the evidence, the District Judge may accept, reject or modify in whole or in part, the Magistrate Judge's proposed findings and recommendations. *U.S. v. Raddatz*, 447 U.S. 667, 673-675 (1980), *reh'g den.*, 448 U.S. 916 (1980) and 28 U.S.C. §636 (b)(1)(B).

### III. ANALYSIS

The Fourth Amendment of the United States Constitution provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Stopping a vehicle and detaining its occupants amount to a seizure under the Fourth Amendment. *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008). As such, Fourth Amendment protections extend to brief investigatory stops of persons or vehicles. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). When deciding if the seizure of evidence is a Fourth Amendment violation, the Court must first decide "whether the officer's action was justified at its inception," and second, "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) and *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). If the

officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). The issue before the Court is whether the evidence seized because of Sanchez's stop and arrest should be suppressed because the officer lacked "probable cause" to conduct the alleged illegal traffic stop for a civil infraction, a completed misdemeanor, and/or lacked reasonable suspicion to stop and search the vehicle for ongoing criminal activity. *See Terry,* 392 U.S. at 1 and *United States v. Hill*, 195 F.3d 258, 263-64 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000).

In the report and recommendation, the Magistrate Judge determined that Agent Hill did not have probable cause to stop Sanchez for violating Tenn. Code Ann. § 55-8-154(a) because Sanchez's speed did not obstruct the flow of traffic; or probable cause to stop Sanchez for violating Tenn. Code Ann. § 55-8-123 because Sanchez's lane excursion was isolated and brief. However, the Magistrate Judge concluded that Agent Hill did have a reasonable suspicion that Sanchez was violating Tenn. Code Ann. § 55-4-110 (b) because the trailer ball hitch prohibited the Agent's ability to fully read the license plate. *See United States v. Simpson*, 520 F.3d 531, 544 (6th Cir. 2008). Finding that reasonable suspicion existed for the stop, based on the obstructed license plate in violation of Tenn. Code Ann. § 55-4-110(b), the Magistrate Judge recommends that Defendant's motion to suppress be denied.

1. **Basis for Stop- Obstruction of License Plate**

Defendant objects to the Magistrate Judge's finding that there was reasonable suspicion to conduct the stop based on a violation of Tenn. Code Ann. § 55-4-110(b) because the agent could easily read the license number while traveling in the left lane beside Sanchez's vehicle. Defendant asserts that the Magistrate Judge incorrectly rejected the Sixth Circuit's precautions in *Simpson* against too broadly interpreting Tenn. Code Ann. § 55-4-110(b). Defendant distinguishes the cases

4

relied upon by the Magistrate Judge as follows: that the *Ochoa* and *Martin* decisions involve complete obstruction of the tags that prevented the officers from reading the tags from any vantage point.[1] In addition, the *Dunbar* case did not involve a Tennessee criminal statute. Further, since the *Dunbar* decision, the Michigan Legislative House committee has taken steps to revise the Michigan Vehicle Code to provide that no Code violation occurs when tow ball hitches, bike racks, etc. partially obstruct a license plate. *See* MCL 257.225. (ECF No. 33.)

The Government responds that the Magistrate Judge correctly relied on cases in which the officer could not view the license plate from directly behind the vehicle or without taking special measures to do so. Thus, reasonable suspicion existed, and the stop of the vehicle was legally justified. *See Ochoa*, 2012 WL 60832476, at *8. In addition, and contrary to the Magistrate Judge's recommendations, the Government Objects to the Magistrate Judge's recommendation that speed, and the lane violation fell short of providing the officer with probable cause to justify the stop. The Government reasserts that all three grounds justify the traffic stop in this case: the slower speed on the interstate, the incident in which the vehicle briefly veered across the fog line, and that the license plate was partially obscured, all of which created a reasonable suspicion and/or probable cause for the stop, based on the totality of the circumstances.[2] (ECF No. 34.)

As noted above, the Magistrate Judge found that Agent Hill had reasonable suspicion to believe that Sanchez was violating Tenn. Code Ann. § 55-4-110. Tenn. Code Ann. § 55-4-110(b) reads:

---

[1] *See State v. Ochoa*, No. M2011-02400-CCA-R3-CD, 2012 Crim. App. LEXIS 999 at *21 (Tenn. Crim. App. Dec. 7, 2012) and *State v. Martin*, No. M2011-02296-VCA-R3CD, 2012 Tenn. Crim. App. LEXIS 344 at *2 (Tenn. Crim. App. May 24, 2012).
[2] The Government also contends that Defendant mischaracterizes Agent Hill's testimony that he could "easily" obtain the license plate number once he changed lanes to pull beside his vehicle. Defendant did not object to the Magistrate Judge's proposed findings of fact so this issue need not be addressed.

> (b) Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so to prevent the plate from swinging and at a height of not less than twelve inches ("12") from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible . . . . No tinted materials may be placed over a license plate even if the information upon the license plate is not concealed.

Tenn. Code Ann. § 55-4-110(b), effective July 1, 2013.

Defendant objects to the Magistrate Judge's finding that Agent Hill had reasonable suspicion to believe a violation of the statute occurred because Agent Hill could "easily … ascertain the one tag number he could not see by simply adjusting his position in the traffic lane," thereby removing the possibility that a violation had occurred. (ECF No. 34, 5.) The Defendant argues that although *Simpson* affirmed the decision of the district court, it rejected the district court's "over broad interpretation" of the statute. [3] *See Simpson*, 520 F.3d at 544 (*quoting United States v. Simpson*, No. 1:06-CR-21, 2006 WL 3198945, at *4 (E.D. Tenn. Oct. 30, 2006)). After quoting the offending language used by the district court, the *Simpson* court indicated, by way of dicta, that taken literally, such a broad reading of the statute ". . . would mean that a police officer who had difficulty seeing a license plate at some unspecified distance or position, *even if the license plate were visible at a closer distance or different position,* could nevertheless stop a vehicle." *Simpson*, 520 F.3d at 544 (*emphasis added*). The clear implication of this language is that reasonable suspicion to conduct a traffic stop does not exist if an officer could read a license plate after repositioning himself or herself. Following this logic, the

---

[3]The Defendant comments that "How *Simpson* is not directly on point for the issue here escapes the defense." The comment appears gratuitous and unnecessary. In this Court's view, referring to a judicial officers' finding or recommendation in such a manner by any party, even in an indirect way, is inappropriate. See Tenn. Sup. C. R. 8, Preamble and Scope § [6], effective January 1, 2011; West Tenn. L.R. Guidelines for Professional Courtesy and Conduct, Rule I.

Defendant argues that Agent Hill did not have legal authority to stop the vehicle operated by Defendant on the evening in question.

The Sixth Circuit has ruled that the Tennessee statute imposes a duty to have visible and legible license plates at all times. In that regard, the question is not whether an actual violation was occurring but if the officer has an objectively reasonable suspicion that a violation of the statute was occurring. *Simpson*, 520 F.3d at 536, 542, 544; *United States v. Bullock*, No. 17-cr-20285-SHL-tmp, 2018 WL 3474089 at *3 (W.D. Tenn. July 19, 2018); and *State v. Matthews*, No. M200100754CCAR3CD, 2002 WL 31014842 (Tenn. Crim. App. Sept. 10, 2002.)

The Court notes that this case is factually different and distinguishable from nearly all cases cited by the parties. In these cases, for one reason or another, officers had to initiate a vehicle stop before the entire license plate could be read. Because of this, the officers had an objectively reasonable suspicion that the statute was being violated prior to making the stop. In this case, after the officer repositioned himself, he could read the license plate. Thereafter, he returned to the rear of the vehicle, and followed it for some distance before initiating the traffic stop.

The Magistrate Judge correctly identified the issue in this case - "whether the statute is violated when a registration plate is visible from certain angles but not from a position behind the vehicle." (ECF No. 33, 12-13.) The Magistrate Judge found *People v. Dunbar*, 499 Mich. 60 (2016) helpful because in all relevant ways *Dunbar* and the case before this Court are factually and legally similar. As noted above, Sanchez objects to the Magistrate Judge's reliance on *Dunbar* because it interprets the Michigan statute, which was subsequently amended. The Court observes that although the Michigan Legislature took steps to change its statute, Tenn. Code Ann. § 55-4-110(b) has remained unchanged.

As the Court noted, the cases cited by the parties are factually distinguishable. In these cases, the license plates were obscured by dirt, oil, or some type of covering and therefore, illegible. However, a case that is helpful to this Court, both factually and legally, is the unpublished state case referenced above, *State v. Matthews*, No. M200100754CCAR3CD, 2002 WL 31014842 (Tenn. Crim. App. Sept. 10, 2002.) Factually, the Officer approached appellant's vehicle, he could not see the license plate because it was dark and the light bulb that usually illuminates the plate was not on. As the court noted, "[the officer] noticed that there was no light on the car's license plate and he was unable to see if in fact the car had a license plate. He followed the car, saw that there was a license plate, and called in the license plate number immediately before stopping the car." *Id.* at *1.[4] The appellant argued that he was not required to turn on his lights, even though Tenn. Code Ann. § 55-4-110(b) required that the license plate be clearly visible. The court affirmed denial of appellant's motion to suppress, even though the officer could see the plate and called in the number before the stop was made. Similarly, in the case at hand, initially, the officer could not read the license plate and had to reposition himself to see the entire plate. Still, from behind, the tow ball hitch obscured the license plate, which amounted to a violation of the statute.

What is also helpful to this Court is *Matthews'* consideration of legislative intent, because when necessary, courts are to give effect to the intent or purpose of the legislature as expressed in the statute. "We must consider the 'natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of that language.'" *Simpson*, 520 F.3d at 536 (quoting *Worrall v. Kroger Co.*, 545 S.W.2d 736 (Tenn. 1977)). The *Matthews* court indicated that "[e]ven if the legislature

---

[4] It is unclear whether the dispatcher informed the officer before or after the stop that the license plate was registered to another vehicle.

intended as a general rule not to require the display of headlights until a half hour following sunset, *it also intended that vehicle license plates be clearly visible at all times." Matthews,* 2002 WL 31014842 at *3 (*emphasis added*).[5] By failing to keep his license plate visible, Matthews gave the officer reasonable suspicion to stop the vehicle. Similarly, in this case, by placing the tow ball hitch in such a way to block part of the license plate, Sanchez gave Officer Hill reasonable suspicion to make the stop in this case.

Therefore, the Magistrate Judge correctly found reasonable suspicion for the stop under Tenn. Code Ann. § 55-4-110(b). Defendant's objections are Overruled.

2. **Basis for Stop-Speed**

The Court also agrees with the Magistrate Judge's recommendations that Agent Hill lacked probable cause for a stop for violations of Tenn. Code Ann. § 55-8-154(a) and Tenn. Code Ann. § 55-8-123. According to Tenn. Code Ann. § 55-8-154(a), no person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when a slower speed is necessary for safety purposes or for compliance with the law. The Tennessee Supreme Court has provided the following guidance regarding when a slow-moving vehicle impedes traffic:

> We conclude, therefore, that a driver of a slow-moving automobile impedes traffic when his or her reduced speed interrupts the normal and reasonable movement of traffic by blocking or backing up traffic, unless the reduced speed is necessary for safe operation or in compliance with the law. Furthermore, while not an exhaustive list, we believe that when a trial court reviews whether a slow driver impeded traffic it should consider how slow the driver's automobile was traveling, the posted maximum speed limit, the posted minimum speed limit, if any, the effect on traffic, the duration of the effect on traffic, and the normal and reasonable flow of

---

[5] This Court is mindful of *Simpson's* criticism of *Matthews* for failure to discuss distance or viewpoint. *See Simpson*, 520 F.3d at 544, fn. 15. However, *Matthews'* reference to legislative intent may not be ignored. The court noted, "[t]he most basic duty of a court interpreting statutes is to ascertain and give effect to the intent and purpose of the legislature." *Matthews,* 2002 WL 31014842 *3, (*quoting State v. Walls*, 62 S.W.3d 119 (Tenn. 2001)).

> traffic in that area. Also, the trial court should consider whether other traffic could safely pass the slow-moving automobile in the right lane as provided in Tennessee Code Annotated section 55-8-118 (2004)(internal quotations omitted.)

*United States v. Hutton*, No. 3:12-00215, 2013 WL 3976628, at * 7 (M.D. Tenn. Aug. 2, 2013) (*quoting State v. Hannah*, 259 S.W.3d 716, 722 (2008)). In this case, neither the investigative report, nor Agent Hill's testimony state that other vehicles were blocked, backed up or stopped. The record indicates only that Sanchez was traveling slower than normal. The report and recommendation indicate that Hill testified Sanchez was driving "at approximately fifty to fifty-five miles per hour in a zone where the speed limit was sixty-five miles per hour." In addition, Sanchez's vehicle was not impeding or obstructing traffic because other vehicles were able to pass. (ECF No. 33, 2, 9.) Accordingly, the Court agrees with the Magistrate Judge's recommendation that the Agent did not have probable cause to conduct a stop for impeding traffic by a slow moving vehicle, in violation of Tenn. Code Ann. § 55-8-154(a). The Government's objection on this basis is Overruled.

3. **Basis for Stop-Veering into Fog Lane**

Lastly, the primary purpose of Tenn. Code Ann. § 55-8-123(1) is to enhance highway safety. However, the Tennessee Supreme Court has rejected cases that conclude that an officer *always* has probable cause to stop a driver upon witnessing a single fog lane crossing. *See State v. Smith*, 484 S.W.3d 393, 410-11 (Tenn. 2016)(emphasis added). On the other hand, probable cause does exist for a violation of Tenn. Code Ann. § 55-8-123(1) when the officers' corroborated testimony shows that the driver crossed the fog line three times and was otherwise all over the highway. *United States v. Carter*, No. 4:17-cr-11-TRM-SKL, 2017 WL 8895627 at *6 (E.D. Tenn. Dec. 29, 2017). Agent Hill's investigative report dated March 9, 2017 provides the following: "Agent Hill then transitioned back to lane 2 and when he did he observed the

driver of the vehicle to [sic] cross over the painted fog line at a distance that cause[d] Agent Hill concern for the driver and also the remainder of traveling motorist on the roadway." (ECF No. 30.) As the Magistrate Judge found, and this Court agrees, the isolated and brief incident of Sanchez's truck veering across the lane was not sufficient for probable cause for this violation. *Freeman*, 209 F.3d at 466-67 and *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). Accordingly, the Government's objection in this regard is Overruled.

## CONCLUSION

After a *de novo* review of the Magistrate's Report and Recommendation, the Defendant's and Government's objections, in addition to the hearing record, the Court adopts the Magistrate Judge's Report and Recommendation, ECF No. 33, overrules the parties' objections and finds that Defendant's Motion to Suppress, ECF No. 19, should be Denied.

**IT IS SO ORDERED** on this 9th day of October 2018.

*s/John T. Fowlkes, Jr.*
John T. Fowlkes, Jr.
United States District Judge